## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EARL HARRIS,                           )
                                       )          Civil Action No. 11 - 1469
                    Plaintiff,         )
                                       )
          v.                           )          Chief Magistrate Judge Lisa Pupo Lenihan
                                       )
JEFFERY A. BEARD, LOUIS                )
FOLINO, and CORRECTIONS                )          ECF No. 11
OFFICER L.P. FORD,                     )
                                       )
                    Defendants.

## MEMORANDUM ORDER

This case is before the Court on the Motion to Dismiss filed by Defendants Jeffery A. Beard, Louis Folino, and Corrections Officer L.P. Ford.  (ECF No. 11.)  For the following reasons, the Motion will be granted with prejudice in part and without prejudice in part.

### I.        Background and Procedural History

Plaintiff, Earl Harris ("Harris"), filed a Complaint on November 16, 2011, against Defendants Jeffery A. Beard ("Beard"), former Secretary of Corrections; Louis Folino ("Folino"), Superintendent for the State Correctional Institution at Greene ("SCI-Greene"); and L.P. Ford ("Ford"), a Corrections Officer at SCI-Greene at the time of the alleged violations. (ECF No. 6.)  The Complaint alleges violations of Harris's right to access the courts and may imply a due process claim.  (ECF No. 6 at 1.)  Defendants filed a Motion to Dismiss and supporting Brief on February 15, 2012.  (ECF Nos. 11, 12.)  Harris filed a Motion to Amend on March 12, 2012, however the Court found that Harris attempted to amend his Complaint incorrectly and extended Harris's time to amend until June 1, 2012.  (ECF No. 17.)  Harris did

1

not file an amended Complaint by June 1, 2012.  As such, Harris's Motion to Amend will be construed as a response in opposition to Defendants' Motion to Dismiss.  Even so, claims raised for the first time in a response will not be addressed.  *See*, <u>Hang On, Inc. v. City of Arlington</u>, 65 F.3d 1248 (5th Cir. 1995); <u>Gueson v. Feldman</u>, No. 00-cv-1117, 2002 WL 32308678, at *4 (E.D. Pa. Aug. 22, 2002) ("A plaintiff may not raise new claims in response to a motion to dismiss.").

According to the Complaint, Harris is currently incarcerated at SCI-Greene and is serving a life sentence.  (ECF No. 6 at 1.)  On March 21, 2010, Harris gave Ford an envelope addressed to the U.S. District Court for the Eastern District of Pennsylvania that contained a petition for writ of habeas corpus with attached exhibits.  (ECF No. 6 at 2.)  Harris contends that he cannot reproduce the attached exhibits.  (ECF No. 6 at 2.)  Further, Harris gave Ford a cash slip for payment of the postage fee from his inmate account. (ECF No. 6 at 2.)  Harris watched Ford sign, stamp, and staple the cash slip to the envelope, but did not observe what Ford did with the mail afterwards.  (ECF No. 6 at 2.)

On March 26, 2010, Harris received a record of his inmate account and noticed that postage payment was not withdrawn for the envelope. (ECF No. 6 at 2.)  Harris contacted inmate accounting and, on March 29, 2010, was notified that inmate accounting did not receive the cash slip.  (ECF No. 6 at 2.)  Harris then filed a grievance against Ford, accusing her of throwing his mail in the trash and denying him access to the courts.  (ECF No. 6 at 2; No. 6-1.)  Harris's grievance was denied on March 30, 2010, by Dan Davis ("Davis").  (ECF No. 6 at 2.)  Harris claims that Davis rejected Harris's grievance by stating that Ford did not work at SCI-Greene, however the attached exhibit of Harris's response has been partially redacted and does not indicate that Harris's response was based on an understanding that Ford did not work at SCI-Greene.  (ECF No. 6 at 2; No. 6-2.)

On April 8, 2010, Harris filed a grievance against Davis alleging that Davis lied about whether Ford worked at SCI-Greene and sought relief of $350,000. (ECF No. 6-3.)  Harris's grievance was denied and Folino denied the grievance appeal.  (ECF No. 6 at 2.)  Harris alleges that responses to his grievances were purposefully misleading and incorrect as a result of a conspiracy to deny him access to the courts. (ECF No. 6 at 2.)  Harris wrote to Folino on April 11, 2010, concerning the grievance process, and, on April 19, 2010, Folino sent Harris a grievance rejection letter.  (ECF No. 6 at 2.)  This letter informed Harris that his grievance was denied because "calling someone a liar is not courteous" and that Harris's initial grievance involving Ford throwing away his mail was being processed.  (ECF No. 6-8 at 1.)

Davis assigned Captain A.E. Gumbarevic ("Gumbarevic") to investigate the grievance against Ford.  On May 7, 2010, Gumbarevic sent Harris a summary of his findings.  (ECF No. 6-9 at 1.)  Gumbarevic's report informed Harris that Ford confirmed that she took custody of Harris's mail and, after signing, stamping, and stapling the accompanying cash slips, placed the mail in a blue outgoing mail bag.  (ECF No. 6-9.)  Gumbarevic's report also indicated that Davis was not aware that Ford was employed at SCI-Greene and did not intend to mislead Harris. (ECF No. 6-9.)   Although Gumbarevic wrote that Harris's issue in regard to the missing documents needed further review, he denied Harris's claim for restitution.  (ECF No. 6-9.)

Harris appealed Gumbarevic's decision on May 18, 2010.  (ECF No. 6-10.)  Harris contended in this appeal that Davis intentionally lied regarding Ford's employment because "Officer Ford is the step-daughter of Deputy Martin" and other inmates had filed grievances against Ford in the past that were addressed by Davis.  (ECF No. 6-10.)  Folino denied Harris's appeal on May 24, 2010, and Harris appealed Folino's decision to the Chief Grievance Officer Dorina Varner ("Varner").   (ECF No. 6 at 3.)   On July 2, 2010, Davis notified Harris via

memorandum that "Secretary Beard" remanded Harris's grievance for further review.  (ECF No. 6 at 3; No. 6-13.)  On July 3, 2010, Harris received a letter from Varner telling him that he would receive a revised response to his grievance. (ECF No. 6 at 3.)  Gumbarevic was reassigned to investigate the grievance involving Ford a second time.  (ECF No. 6 at 3.)  Gumbarevic again found no violation because Ford acted "within the scope of her prescribed duties."  (ECF No. 6-15.)  Davis appealed Gumbarevic's findings on August 8, 2010, and Varner denied his appeal on September 3, 2010.  (ECF No. 6 at 3.)

Harris's Complaint includes claims against Ford, Folino, and Beard.  (ECF No. 6 at 4-5.)  Harris claims that Ford violated his First Amendment right to access the courts when she lost or threw his legal mail in the trash.  (ECF No. 6 at 4.)  Further, Harris claims that Ford violated the mailbox rule when she failed to place his mail in the mail bag and contends that Ford should be liable for violating his First Amendment rights to access the court and engage in free speech.  (ECF No. 6 at 4.)   Harris claims that Folino was grossly negligent in the management of subordinates who committed unconstitutional acts when he denied Harris's appeal concerning the whereabouts of his mail.   (ECF No. 6 at 5.)   Harris contends that Folino had "full knowledge" of violations of his First Amendment rights and attempted to cover-up these violations, therefore Folino is liable in his official and individual capacity for violating Harris's First Amendment rights.  (ECF No. 6 at 5.)  Finally, Harris argues that Beard should be "held liable for the unconstitutional acts committed by his subordinates."  (ECF No. 6 at 5.)  Harris claims that Beard is responsible for policy decisions and that Beard's responsibilities include ensuring proper training for subordinates.  (ECF No. 6 at 5.)  Harris claims that Beard remanded his initial grievance because staff at SCI-Greene did not conduct a full and effective investigation.  (ECF No. 6 at 5.)  Harris contends that "Beard should be held liable for under the

4

First Amendment for violating [Harris's] constitutional right of access to the courts when he failed to grant [Harris] the relief requested…." (ECF No. 6 at 5.)  Harris argues that Beard had "full knowledge" of violations to Harris's constitutional rights and is guilty of "gross negligence in managing subordinates," thus Beard should be "held liable in his official and individual capacity under the First Amendment." (ECF No. 6 at 5.)  Harris seeks $350,000 and a trial by jury. (ECF No. 6 at 6.)

## II.      Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007).   "Factual allegations must be enough to raise a right to relief above a speculative level."  Id. at 555.  The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents.  Id. (citations omitted).  Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III.    Discussion of Applicable Legal Authority and Analysis

### 1.  Personal Involvement of Defendants Beard and Folino

Harris alleges claims for violations of his constitutional rights against Defendants Folino, the Superintendent at SCI-Green, and Beard, former Secretary of Corrections.  For liability under Title 42 U.S.C. § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  The Third Circuit has held that liability for individuals in supervisory roles under § 1983 should be found "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Further, the plaintiff "bears the burden of proving (and hence pleading) facts supporting the defendants' mental states" and "cannot use allegations of civil rights violations that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief under § 1983."  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005)).  Finally, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances.  *See* Dellarciprete, 845 F.2d at 1208.

Harris contends that Defendant Folino is liable because he rejected Harris's grievance against Davis.  (ECF No. 6 at 2.)  Contrary to Harris's response, the Complaint does not allege that Folino lied to Harris by suggesting that Ford did not work at SCI-Greene, rather, the Complaint alleges that the misidentification of Ford was Davis's error.  (ECF No. 6 at 3-5; No.

6-6; No. 6-11; No. 17 at 3.)  Harris's Complaint alleges only that Folino evaluated a grievance filed against Davis and an appeal of Gumbarevic's investigation.  (ECF No. 6 at 3-5.)

Harris also contends that "Defendant Beard can be held liable for the unconstitutional acts committed by his subordinates" due to Beard's responsibility to ensure proper training and enforcement of policy.  (ECF No. 6 at 5.)  The only participation by Beard alleged in the Complaint is the remand of a grievance and failure "to grant [Harris] the relief requested…."  (ECF No. 6 at 5.)  Further, Harris fails to attach any document indicating actual correspondence with Beard.

Defendants contend that Harris fails to establish personal involvement of Defendants Folino and Beard when the Complaint includes no allegations of involvement outside the grievance process.  (ECF No. 12 at 6.)  Because Harris's Complaint alleges only Folino and Beards' involvement in the grievance process and this involvement does not establish requisite personal involvement for liability under § 1983, Harris's Complaint will be dismissed with prejudice in its entirety against Defendants Folino and Beard.

## 2. Access to Courts

Under the First Amendment, prisoners have a right of access to the courts.  *See* <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  However, in <u>Lewis</u>, the Supreme Court held that an "actual injury" is a "constitutional prerequisite" for access to the courts claims.  <u>Id</u>. at 351.  An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost.  *See* <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2003); *see also* <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008).  The Third Circuit has explained that a plaintiff must specifically state in his complaint the underlying claim with the requirements of Federal Rule of Civil Procedure 8 to the same degree as if the underlying claim was being pursued independently.  <u>Christopher</u>, 536 U.S. at 417.  In

8

this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "'arguable' nature of the underlying claim is more than hope." Id. at 416.  Additionally, the plaintiff must clearly allege in the complaint the official acts that frustrated the underlying litigation and must also specifically identify a remedy that may be awarded as recompense in a denial of access case that would not be available in any other future litigation.  Id. at 414.

Here, Harris clearly alleges that because his habeas corpus petition was improperly handled, he lost "seven exhibits to his petition which he cannot reproduce."  (ECF No. 6 at 2.) However, Harris does not state in his Complaint the underlying habeas claim that he was allegedly unable to pursue due to Defendant Ford's actions.  As such, it is unknown whether Harris suffered an actual injury in that he was unable to pursue a nonfrivolous arguable claim due to the lost irreplaceable documents.  Moreover, Harris has failed to allege a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  Thus, he has failed to state a claim upon which relief may be granted with respect to his access to court's claim. However, because it is unclear whether granting Harris leave to amend his Complaint with respect to this claim would necessarily be futile, Defendants' Motion to Dismiss will be granted without prejudice on this issue and Harris will be given an opportunity to amend his Complaint to include evidence that he suffered an actual injury.[1]  In doing so, Harris must specifically state the underlying habeas claim that he was unable to litigate due to the lost exhibits.  He should also specifically identify his underlying state criminal conviction that he was seeking to challenge pursuant to his habeas petition.

---

[1]     Although Harris argues in his Motion to Amend, construed as a response, multiple physical injuries allegedly resulting from the loss of mail, (ECF No. 17 at 2), the Lewis standard contemplates only injuries that hinder the pursuit of a nonfrivlous legal claim and not resulting bodily stresses.

   **3.  Due Process**

   Although Harris does not specifically allege a violation of his due process rights,

Defendants address in their Brief the credibility of an implied due process claim based on the

alleged loss of mail.  (ECF No. 12 at 3.)  The Third Circuit has held that,

> [t]o the extent that mistakes such as erroneous assessments or incorrect takings might occur,
> they may be corrected through the prison's grievance program without any undue burden on
> a prisoners' rights. On the other hand, to require predeprivation proceedings for what are
> essentially ministerial matters would significantly increase transaction costs and essentially
> frustrate an important purpose of the program, which is to reduce the county's costs of
> incarcerating prisoners.

Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).  Further, "where it is

impractical to provide meaningful predeprivation process, due process will be satisfied by a

meaningful postdeprivation remedy."  Id. at 421. (citing Parratt v. Taylor, 451 U.S. 527, 539

(1981), *overruled on other grds. by* Daniels v. Williams, 474 U.S. 327 (1986)), *See* Reynolds v.

Wagner, 128 F.3d 166 (3d Cir. 1997).  Additionally, the Supreme Court has held that,

> an unauthorized intentional deprivation of property by a state employee does not constitute a
> violation of the procedural requirements of the Due Process Clause of the Fourteenth
> Amendment if a meaningful postdeprivation remedy for the loss is available. For
> intentional, as for negligent deprivations of property by state employees, the state's action is
> not complete until and unless it provides or refuses to provide a suitable postdeprivation
> remedy.

Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus, as held in Parratt and reaffirmed in Hudson,

the availability of a meaningful postdeprivation remedy satisfies the Fourteenth Amendment

procedural due process guarantee.  Further, common law remedies and prison grievance systems

have been identified as adequately meaningful postdeprivation remedies.  Hudson, 468 U.S. at

534; Tillman, 221 F.3d at 422; Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006).

   Harris fails both to raise a specific due process claim and to respond to Defendants' Brief

addressing any implied violation.  It is clear that the prison grievance process was available to

Harris because he attaches to his Complaint multiple grievances and related papers that he filed pursuant to this incident.  (ECF Nos. 6-1, 6-3, 6-7, 6-12.)  Therefore, any implied due process claim will be dismissed with prejudice because the prison had an administrative grievance process for Harris's alleged loss of property, and he sought redress through that process before seeking redress from this Court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED WITH PREJUDICE** with respect to Harris's claims against Defendants Beard and Folino and Harris's Complaint is hereby dismissed in its entirety against these two Defendants. The Motion is also **GRANTED WITH PREJUDICE** with respect to any implied due process claim Harris may be seeking to raise in his Complaint.  The Motion is **GRANTED WITHOUT PREJUDICE** with respect to Harris's access to courts claim and Harris will be given leave to file an amended complaint no later than **September 14, 2012** to address the deficiencies stated herein.  Harris is granted leave to amend his Complaint only with respect to his access to courts claim.  He is not permitted to include new claims within his amended complaint.  If Harris fails to file an amended complaint by September 14, 2012, then the Court will enter an order granting Defendants' Motion to Dismiss with prejudice with respect to this claim and this case will subsequently be dismissed.

Dated:  August 16, 2012

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  Earl Harris
     BX-9566

SCI Greene
175 Progress Drive
Waynesburg, PA  15370

Counsel of record.